## Harry A. Frankel, Appellant, v. Allied Mills, Inc., Appellee.

### Gen. No. 39,450.

Opinion filed December 15, 1937. Rehearing denied December 28, 1937.

HENRY E. PRATT and LANDIS, LANDIS & LANDIS, of Chicago, for appellant; ALVIN LANDIS, of counsel.

WINSTON, STRAWN & SHAW, of Chicago, and MILLER, ELLIOTT & WESTERVELT, for appellee; JOHN D. BLACK, of Chicago, FRANK T. MILLER, JOHN D. THOMASON, of counsel.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

Plaintiff appeals from a final judgment entered by the court in favor of the defendant notwithstanding a

verdict was returned by the jury in favor of the plaintiff in the sum of $17,000.

On September 27, 1935, plaintiff instituted this action against the defendant by filing a complaint alleging substantially that he was employed by the defendant as an agent and broker to sell certain real estate owned by the defendant for an agreed commission of $17,000. On motion of the defendant, the original complaint was stricken and thereafter an amended complaint was filed. The defendant filed an answer to the amended complaint. Subsequently the plaintiff filed additional counts to the amended complaint and the defendant filed its answer to the additional counts. During the course of the trial the defendant filed an amendment to its answer to the additional counts.

A trial was had before the court and a jury and after the plaintiff rested, the defendant presented a motion for a directed verdict, which motion the court took under advisement and reserved its ruling thereon. The defendant did not offer to introduce any testimony on its behalf and at the close of the case renewed its motion for a directed verdict, which renewed motion the court also took under advisement. The issues were submitted to the jury under instructions by the court and after due deliberation, the jury returned its verdict in favor of the plaintiff for $17,000. The court entered and recorded the verdict, and thereafter the defendant presented its motion for a judgment notwithstanding the verdict of the jury, which motion was allowed by the court and an order was entered granting judgment for the defendant.

The defendant contends that under the terms of the contract of brokerage in the instant case plaintiff was not entitled to commission unless the seller and the purchaser entered into a written contract of sale which was binding and enforceable, and points to certain testi-

mony of the plaintiff as to a conversation in New York between him and Hinkley G. Atwood, president of the defendant corporation, which is: "He (Atwood) asked me how much commission I wanted and I said $25,000 if a contract is consummated. At first he said it was a lot of money and was not sure that a deal could be agreed upon and I told him that a contract could be made. Finally he said, 'all right, if I make a satisfactory deal, I will pay you $25,000.'" On cross-examination plaintiff further testified: "Mr. Atwood did not protest against paying me a commission in New York. The first time we met in the Distillers & Brewers offices, I told him it was a large deal and that a commission of $25,000 should be paid to me as broker, and after talking a while he said: 'all right, if I make a deal I will pay you a commission of $25,000.'" And further that he previously testified that:

"He (meaning Atwood) made the arrangements there for me to be the agent in this deal, right there and then. The contract was not signed then. It was just if and when he did make a contract I was to get $25,000. If he did not make a sale, I was to get nothing." Defendant also points to the testimony of Robert Silverstein, a witness for the plaintiff, which was to the same effect.

This language, which is criticized by the defendant, is not altogether controlling in this case for the reason that the parties themselves construed the effect of the contract entered into. From the evidence of Francis J. Parker and from other evidence in the record, it appears that the amount of the commission the plaintiff was to receive was discussed in New York with the parties in interest, when payment of the amount was considered by witnesses Francis J. Parker and Mr. Buhrer, who acted in fixing the amount with the consent of all of the parties. Mr. Atwood was there at the

time representing the defendant company, as well as Mr. Ungerleider and the plaintiff. The amount to be paid to the plaintiff appears from plaintiff's exhibit 1, which is initialed by Parker and Buhrer, and according to the figures the amount agreed upon was $17,000. The witness Parker testified that when Mr. Atwood, Mr. Ungerleider and the witness came out of a private office to discuss the commission with the plaintiff, the contract had been signed; that Mr. Atwood, for his company, agreed to pay a lesser commission of $17,000, after Mr. Buhrer and Mr. Parker had decided upon the amount that was to be paid.

From these facts it seems to be clear that the plaintiff was entitled to a commission for services rendered; that the amount was agreed upon between the parties and by their acts the plaintiff was entitled to payment; and that the amount to be paid was fixed at the sum of $17,000.

The only other question to be considered is whether the plaintiff not being a licensed broker in the State of New York is precluded from recovery because of that fact. Plaintiff was a licensed broker in the State of Illinois, and upon invitation, at least, called on Mr. Atwood in New York with reference to the sale of the property located in Peoria, Illinois, consisting of a rather large tract of land, together with the buildings thereon, which were used for the distilling of liquor, and title to which would, according to the laws of Illinois, have to be conveyed by proper instruments.

The language of sec. 442-d, the section of the statute of the State of New York upon which the defendant relies as a bar to plaintiff's action, is as follows: "Section 442-d: No person, co-partnership or corporation shall bring or maintain an action in any court of this State for the recovery of compensation for services rendered in any place in which this article is applic-

able, in the buying, selling, exchanging, leasing, renting, or negotiating a loan upon any real estate without alleging and proving that such person was a duly licensed real estate broker or real estate salesman on the date when the alleged cause of action arose.''

As we have already indicated in this opinion, the plaintiff was a licensed real estate broker doing business in Illinois. The contract which resulted in the claim now before this court had its inception in Illinois when plaintiff learned from Mr. Miller, a member of the board of directors and attorney for the defendant, that the property was for sale. When the question of sale was discussed by the plaintiff with Mr. Atwood, the president of the defendant company, it is evident that this transaction between the plaintiff and the defendant was for the purpose of carrying out the suggestion of the plaintiff to Mr. Atwood regarding the sale of the property, and it is wholly immaterial whether the plaintiff was licensed to do business in the State of New York.

In the case of *Zeigler v. Illinois Trust & Savings Bank,* 245 Ill. 180, where an issue arose somewhat similar to the one in the instant case, the plaintiff sought to recover for services rendered as a doctor upon a contract entered into between the doctor and a Mrs. McVicker of Chicago, the services being rendered in California, where the doctor, by virtue of his contract, was obliged to attend her and render medical service. The defense was, because he was not licensed to practice medicine in California he could not recover for the amount due him under the contract. The court said:

''Appellee complains of the action of the court in refusing to give certain instructions asked in its behalf and in giving other instructions asked on the part of appellant. The questions raised on a number of these instructions have been already passed upon in

the discussion of other questions involved and it will not be necessary to deal with them further. Matters raised by some of them, however, have not been noted. About four months before her death Mrs. McVicker, accompanied by the appellant, went to the State of California, where she died. Under a special arrangement made with Mrs. McVicker appellant accompanied her to California and attended her there. It is conceded that appellant was not licensed to practice medicine in the State of California, and appellee insists that for that reason he is not entitled to recover anything for his services performed in the State of California, whether rendered pursuant to a contract or otherwise, and that the jury should have been so instructed. Appellant, when in attendance upon Mrs. McVicker, under the terms of his contract, while she was sojourning temporarily in the State of California, was licensed to practice medicine in the State of Illinois, and, so far as the determination of the questions involved here is concerned, it is immaterial whether he had authority to practice medicine in the State of California, or whether the medical attention he gave to Mrs. McVicker while in the State of California was in violation of the laws of that State. He was not engaged in the general practice of medicine in California but was simply in attendance upon his patient, who was a resident of Illinois, while she was temporarily in California. The instructions asked on the part of appellee on this question were properly refused.''

How true that is in this case. The plaintiff was not engaged in the real estate business in the State of New York, but was merely in attendance for the purpose of taking up the question of the sale of property located in the State of Illinois, at the invitation of Mr. Atwood, president of the defendant company; and to carry out his obligation, he was in New York only temporarily.

The facts as to payment, whether by cash or stock, were submitted to the jury who passed upon this question, together with other questions mentioned in this opinion, and in doing so they were guided by the instructions of the court, to which no objections were made.

We are of the opinion that the court erred in entering judgment on defendant's motion notwithstanding the verdict of the jury and the judgment is reversed and judgment entered here for the plaintiff in the sum of $17,000.

*Judgment reversed and judgment here.*

DENIS E. SULLIVAN and HALL, JJ., concur.